# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HCL PARTNERS LIMITED PARTNERSHIP, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., S. DOUGLAS HUTCHESON, DEAN M. LUVISA, AMIN I. KHALIFA and PRICE WATERHOUSECOOPERS, LLP,<br><br>Defendants. | CASE NO. 07cv2245 BTM(NLS)<br><br>**ORDER GRANTING MOTIONS TO CONSOLIDATE, APPOINTING NEW JERSEY CARPENTERS PENSION AND BENEFIT FUND AS LEAD PLAINTIFF, AND APPROVING LEAD COUNSEL SELECTION** |
| KENT CARMICHAEL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., S. DOUGLAS HUTCHESON, MARK H. RACHESKY, AMIN I. KHALIFA and DEAN M. LUVISA,<br><br>Defendants. | CASE NO. 08cv0128 BTM(NLS) |

Westchester Capital Management, Inc. ("Westchester") and Green & Smith Investment Management LLC ("G&S") have filed a motion to consolidate the above-captioned actions, to be appointed as lead plaintiff, and to approve their selected counsel as

1   lead counsel.  The New Jersey Carpenters Pension and Benefit Funds ("Carpenter Funds")

2   have also filed a motion to consolidate the actions, to be appointed as lead plaintiff, and to

3   approve their selected counsel as lead counsel.[1]  For the reasons discussed below, the

4   motions to consolidate are **GRANTED**.  Westchester and G&S's motion for appointment as

5   lead plaintiff and for approval of their attorneys as lead counsel is **DENIED**.  The Carpenter

6   Funds' motion for appointment as lead plaintiff and for approval of their attorneys as lead

7   counsel is **GRANTED**.

8

9                                     **I. BACKGROUND**

10      These class actions are brought on behalf of persons who purchased or otherwise

11  acquired securities of Leap Wireless International, Inc. ("Leap" or "Company"), during the

12  time period between May 16, 2004 and November 9, 2007.[2]  All of the actions allege that

13  Leap and individual officers of the Company made material misrepresentations and

14  omissions of fact regarding the Company's revenues beginning in fiscal year 2004 and

15  continuing through the second quarter of fiscal year 2007.  (The HCL Partners case also

16  names as a defendant PricewaterhouseCoopers, LLP, which allegedly represented that

17  Leap's financial statements were in conformity with accounting principles generally accepted

18  in the United States of America.)

19      On November 9, 2007, Leap announced that it was restating its financial results going

20  back to fiscal year 2004 to correct for errors in previously reported service revenues,

21  equipment revenues, and operating expenses.  According to Leap's press release, the most

22  significant adjustment related to the Company's prior accounting for a group of customers

23  _____

24      [1] Motions for appointment as lead plaintiff and for approval of lead counsel were also
    filed by Louisiana Municipal Police Employees' Retirement System and by Alaska Electrical
25  Pension Fund jointly with Genesee County Employees' Retirement System.  These motions
    were subsequently withdrawn.  The related action Charek v. Leap Wireless, et. al., Case No.
26  07cv2256, was voluntarily dismissed on January 30, 2008.  Campbell v. Leap Wireless, et
    al. was also voluntarily dismissed on May 7, 2008.
27
        [2] The class period in HCL Partners Limited Partnership v.Leap Wireless, Case No.
28  07cv2245 BTM(NLS), is from May 16, 2004 to November 9, 2007, and is the longest class
    period of the three actions.

1  who voluntarily disconnected service.  After the November 9, 2007 announcement, the price

2  of the Company's publicly traded stock plummeted to close at $36.72 per share, declining

3  37% from the previous trading day's close of $58.10.

4       The actions allege that Defendants' material misrepresentations and omissions

5  caused the Company's securities to be overvalued and artificially inflated, causing damages

6  to Plaintiffs and other members of the class.  The actions assert claims for violation of section

7  10(b) of the Exchange Act and Rule 10b-5 and violation of section 20(a) of the Exchange Act.

8

9

10                                    **II.  DISCUSSION**

11  **A.  Consolidation**

12       Consolidation may be appropriate when actions before the court involve a "common

13  question of law or fact ."  Fed. R. Civ. P. 42(a).  All of these actions cover approximately the

14  same time period, arise out of the same facts, and allege violations of the securities laws.

15  Defendants agree that the cases should be consolidated.  Therefore, the Court grants the

16  motions for consolidation.

17

18

19  **B.  Lead Plaintiff & Lead Counsel**

20       Competing motions to be appointed lead plaintiff and to approve selected counsel as

21  lead counsel have been filed by (1) Westchester and G&S, and (2) Carpenter Funds.  As

22  discussed below, the Court finds that Carpenter Funds is most capable of adequately

23  representing the interests of class members.

24

25       **1.  Governing Law**

26       Under the Private Securities Litigation Reform Act ("PSLRA"), no later than 20 days

27  after filing a class action securities complaint, a private plaintiff or plaintiffs must publish a

28  notice advising members of the purported plaintiff class of the pendency of the action, the

1   claims asserted, and that any member of the purported class may move the court to serve

2   as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Not later than 60 days after the date on which

3   the notice is published, any member of the purported class may move the court to serve as

4   lead plaintiff of the purported class.   Id.

5          Within 90 days after publication of the notice, the Court shall consider any motion

6   made by a class member to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The Court

7   shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the

8   court determines to be most capable of adequately representing the interests of class

9   members."  Id.

10         The presumptively most adequate plaintiff is the one who "has the largest financial

11  interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule

12  23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "In other

13  words, the district court must compare the financial stakes of the various plaintiffs and

14  determine which one has the most to gain from the lawsuit.  It must then focus its attention

15  on *that* plaintiff and determine, based on the information he has provided in his pleadings and

16  declarations, whether he satisfies the requirements of Rule 23(a), in particular those of

17  'typicality' and 'adequacy.'"  In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).

18         The presumption of adequacy may be rebutted only upon proof by a member of the

19  purported plaintiff class that the presumptively most adequate plaintiff will not fairly and

20  adequately protect the interests of the class or is subject to unique defenses that render such

21  plaintiff incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

22  If the district court determines that the presumptive lead plaintiff does not meet the typicality

23  or adequacy requirement, the Court must then proceed to determine whether the plaintiff with

24  the next lower stake in the litigation has made a prima facie showing of typicality and

25  adequacy.  Cavanaugh, 306 F.3d at 731.  If so, that plaintiff becomes the presumptive lead

26  plaintiff and other plaintiffs must be given the opportunity to rebut that showing.  Id.

27         A straightforward application of the statutory scheme "provides no occasion for

28  comparing plaintiffs with each other on any basis other than their financial stake in the case."

Cavanaugh, 306 F.3d at 732.  Once the Court identifies the plaintiff with the largest stake in the litigation, "further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." Id.

### 2. Lead Plaintiff Analysis

#### a. Notice and Publication

On November 27, 2007, a notice regarding the HCL Partners lawsuit was published on Market Wire.  Both sets of movants filed their motions within 60 days.  Therefore, the motions are timely.[3]

#### b. Financial Interest

Westchester is the investment advisor to The Merger Fund and The Merger Fund VL. (Cert. of Lead Plaintiff (Ex. B to Kaboolian Decl.) ¶ 1.)  G&S is the investment advisor to the GS Master Trust, MSS Merger Arbitrage 2, and Institutional Benchmark Series (Master Feeder) Limited.  (Id.)  Westchester and G&S are somehow "related," and Roy Behren is the Chief Compliance Officer for both entities.  (Cert. of Lead Plaintiff ¶ 2.)  In claiming that they have suffered the greatest financial loss, Westchester and G&S seek to consolidate the losses suffered by the separate funds.

Carpenter Funds argues, among other things, that Westchester and G&S have not established that they have authority to sue on behalf of the funds and therefore are not qualified as lead plaintiff.  The Court agrees with Carpenter Funds.

The courts are not in agreement when or if investment advisors may serve as Lead Plaintiff based on the financial losses of their clients.  Of the courts that permit investment advisors to serve as lead plaintiff, many require that the investment advisor establish that it

---

[3]  The Court need not reach Carpenter Funds' argument that Westchester and G&S cannot supplement their initial filing with a revised chart recalculating their financial loss. Whether the Court calculates Westchester and G&S's financial losses based on their moving papers or their supplemental filings, the result of this motion is the same.

has specifically been authorized to bring suit on behalf of its clients.  In <u>Weisz v. Calpine Corp.</u>, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002), the court explained that although it appeared that the investment manager had discretionary authority with respect to its clients' accounts, there was no evidence that the investment manager had been authorized by its clients to bring securities law claims on their behalf.  Accordingly, the Court found that the investment manager had not demonstrated itself to be an adequate plaintiff within the meaning of the PSLRA.  <u>See also</u> <u>In re Peregrine Systems, Inc. Sec. Litig.</u>, 2002 WL 3276939 (S.D. Cal. Oct. 11, 2002) (pointing out that although the investment company stated that it had complete investment authority and was the attorney-in-fact with full power and authority to act in connection with its investments, the investment company did not state that it had authority to institute suit and litigate on behalf of its clients); <u>Smith v. Suprema Specialties, Inc.</u>, 206 F. Supp. 2d 627, 635 (D.N.J. 2002) ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf.  StoneRidge Investment has not provided the Court [with] any indication that its members have given it authority to file lawsuits on its behalf."); <u>In re eSpeed, Inc. Sec. Litig.</u>, 232 F.R.D. 95 (S.D.N.Y. 2005) (explaining that in order for an investment advisor to attain standing on behalf of the investors the advisor must be granted both unrestricted decision-making authority *and* the specific right to recover on behalf of his clients).

The Court recognizes that some district courts have held that if an investment advisor has unrestricted decision-making authority in connection with its clients' accounts, it is a "purchaser" and has standing to sue in its own right, regardless of whether its clients formally granted it the authority to sue on their behalf. <u>See</u> <u>In re Rent-Way Sec. Litig.</u>, 218 F.R.D. 101 (W.D. Pa. 2003); <u>In re Sonus Networks, Inc. Sec. Litig.</u>, 247 F.R.D. 244 (D. Mass. 2007). Although an investment advisor may have standing to sue on its own behalf in certain circumstances, the Court agrees with the courts that hold that to the extent an investment advisor seeks to claim losses suffered by its clients in a bid to qualify as lead plaintiff, the investment advisor must show that its clients specifically authorized it to bring securities law claims on their behalf.

07cv2245 BTM(NLS), 08cv0128 BTM(NLS)

1    Westchester and G&S have not shown that their clients delegated the authority to sue

2    for losses sustained by the funds.  In the Certification of Lead Plaintiff, Behren states:

3        Westchester Capital is the Adviser to and has full discretion and controls all
         investments made by The Merger Fund and The Merger Fund VL.  G&S is the
4        adviser to and has full discretion and controls all investments made by the GS
         Master Trust, MSS Merger Arbitrage 2, and Institutional Benchmarks Series
5        (Master Feeder) Limited.

6    (Ex. B to Kaboolian Decl.)   Notably, Behren does not state that the funds authorized

7    Westchester and G&S to sue on their behalf.

8        In a subsequently filed declaration, Behren reiterates that Westchester and G&S "have

9    unrestricted decision-making authority with respect to the funds that they advise and

10   manage." (Behren Decl. ¶ 2.)  Behren further states:

11       *It is my understanding* that if an investment adviser has full discretion and
         control, as the Westchester Movants do on behalf of these funds, and is the
12       attorney-in-fact authorized to undertake all acts, as the Westchester Movants
         are on behalf of these funds, then that investment Adviser has standing to
13       commence legal action on its own behalf, including seeking to be appointed as
         the lead plaintiff in this action.
14
15   (Behren Decl. ¶ 4) (emphasis added).  It is clear from this statement that there has been no

16   specific grant of authority to sue on behalf of the funds.

17       Although Behren states that he is "authorized to undertake all acts" on the behalf of

18   Westchester and G&S (Behren Decl. ¶ 3), he does not state that he has been authorized to

19   undertake all acts on behalf of the funds.

20       Accordingly, Westchester and G&S do not qualify as lead plaintiff.  The presumptively

21   most adequate plaintiff is Carpenter Funds, which expended approximately $907,701.16 to

22   purchase 13,800 shares of Leap during the Class Period.

23       The Court notes that even if Westchester and G&S had authority to sue on behalf of

24   the funds, the Court would have concerns regarding their ability to adequately represent the

25   class.  As investment advisors, Westchester & G&S may be subject to unique defenses.

26   Complicating matters further, the funds are foreign entities based in the Carribean.  However,

27   because Westchester and G&S are not the presumptively most adequate plaintiff, the Court

28   need not determine whether the presumption of adequacy has been rebutted.

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c. Typicality and Adequacy

No member of the purported plaintiff class has rebutted the presumption of Carpenter Funds' adequacy as lead plaintiff by offering proof that Carpenter Funds will not fairly and adequately protect the interests of the class, or is subject to unique defenses that render it incapable of adequately representing the class.  Based upon the record before it, the Court is satisfied that Carpenter Funds' claims are typical and that Carpenter Funds is capable of adequately representing the class.  Therefore, the Court appoints Carpenter Funds as lead plaintiff.

### 3. Lead Counsel Analysis

Under the PSLRA, once the court has designated a lead plaintiff, that plaintiff "shall subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

Carpenter Funds ask the Court to approve their selection of Schoengold Sporn Laitman & Lometti, P.C., as lead counsel and Glancy Binkow & Goldberg LLP to serve as local "liaison counsel."  It appears that these firms have the appropriate expertise to fulfill their roles as lead counsel and liaison counsel.

Accordingly, the Court approves Schoengold Sporn Laitman & Lometti, P.C., as lead counsel and Glancy Binkow & Goldberg LLP as local liaison counsel.

### III. CONCLUSION

For the reasons discussed above, the motions to consolidate are **GRANTED**.  Case Nos. 07cv2245 and 08cv128 are hereby **CONSOLIDATED** for all pretrial proceedings.  The caption page on all future filings shall contain all of the captions.  All future docketing will be done in Case No. 07cv2245, which shall be the main file.

The Court **GRANTS** Carpenter Funds' motion to be appointed lead plaintiff.  The Court also **GRANTS** Carpenter Funds' motion for approval of lead counsel.  The Court approves Schoengold Sporn Laitman & Lometti, P.C., as lead counsel and Glancy Binkow

1  & Goldberg LLP as local liaison counsel.  The Court **DENIES** Westchester and G&S's motion

2  for appointment of lead plaintiff and approval of lead counsel.

3  **IT IS SO ORDERED.**

4

5  DATED:  May 22, 2008

6

7  Honorable Barry Ted Moskowitz
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28